UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Action No. 9:15-cv-81622-Bloom/Valle

JEWELRY REPAIR ENTERPRISES, INC.,

      Plaintiff,

v.

SON LE ENTERPRISES, INC. and SON LE,

      Defendants.

_____/

### ORDER DENYING AMENDED MOTION TO STAY AND COMPEL ARBITRATION

This cause is before the Court upon Defendants, Son Le Enterprises, Inc. and Son Le's Amended Motion to Stay and Compel Arbitration (the "Motion"), ECF No. [21]. The Court has reviewed the Motion, Plaintiff's Memorandum of Law in Opposition ("Pl. Resp."), ECF No. [31],[1] the record in this case, all related filings, and is otherwise fully advised in the premises. For the reasons that follow, the Motion is denied.

**I.    BACKGROUND**

On November 30, 2016, Plaintiff Jewelry Repair Enterprises, Inc. ("Plaintiff") commenced this action against Defendants, Son Le Enterprises, Inc. and Son Le (collectively, "Defendants") for trademark infringement, trademark dilution, unfair competition, and affiliated state law claims such as misappropriation of trade secrets, breach of contract, unjust enrichment,

---

[1] Plaintiff's Memorandum of Law in Opposition, ECF No. [31], was filed on February 5, 2016. Pursuant to S.D. Fla. L.R. 7.1(c), a reply was required on or before February 16, 2016, as February 15, 2016 was a federal holiday.  Defendants have neither filed a reply memorandum nor sought an extension of time to do so.  Accordingly, the Motion is now ripe for adjudication.

1

and preliminary and permanent injunction under Fla. Stat. § 542.335, all related to Defendants' alleged misappropriation of Plaintiff's trademarks and trade secrets. *See generally* Complaint, ECF No. [1]. In short, as stated by Plaintiff, "[t]his action arises out of Defendants' violation of the post termination obligations and restrictive covenants in the Franchise Agreement with [Plaintiff]" (the "Franchise Agreement" or "Agreement"). *Id.* at ¶ 6.

In its pertinent part, the Franchise Agreement provides for binding arbitration:

> If this Franchise Agreement shall be terminated by Franchisor and Franchisee shall dispute Franchisor's right of termination, the parties shall submit said dispute for binding arbitration in Palm Beach County, Florida, pursuant to the provisions of the Florida Arbitration Code . . . .

Franchise Agreement at § 13.1. The Franchise Agreement, with limited exceptions, provides for arbitration of "any controversy or claim arising out of or relating to" the Franchise Agreement. *Id.* at § 13.1.1(a). Specifically, the Agreement states that

> Except as specifically modified by this Section and excepting matters involving remedies as set forth in Section 13.2, any controversy or claim arising out of or relating to this Franchise Agreement, including any claim that this Franchise Agreement, or any part thereof, is invalid, illegal or otherwise voidable or void, shall be submitted to arbitration before the American Arbitration Association in accordance with its commercial arbitration rules, or any other mutually agreeable arbitration association.

*Id.* In turn, § 13.2 excepts certain issues from the scope of the arbitration provision, providing, in its relevant part, that

> The obligation to arbitrate shall not be binding upon either party with respect to claims relating to the Confidential Information or Marks; . . . obligations of Franchisee upon termination or expiration of th[e] Franchise Agreement; matters relating to actions which may impair the good will associated with the Marks; . . . or requests for restraining orders, injunctions or other procedures . . . .

*Id.* at § 13.2. Defendant now seeks to compel arbitration pursuant to the aforementioned terms in the Franchise Agreement. *See* Motion.

Civil Action No. 9:15-cv-81622-Bloom/Valle

## II. DISCUSSION[2]

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 134 S. Ct. 773 (2014) (quoting *Mitsubishi Motors*, 473 U.S. at 625-26); *Hemispherx*, 553 F.3d at 1366 ("The role of the courts is to rigorously enforce agreements to arbitrate.") (internal citation and quotation omitted). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Despite the courts' proclivity for enforcement, a party will not be required to arbitrate where the party has not agreed to do so. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United*

---

[2] Although the Court has recently granted Plaintiff leave to amend its Complaint, see Order Granting Motion to Dismiss, ECF No. [35], the permitted amendment does not affect the outcome of the instant Motion.

3

*Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of contract garnered from the applicable state-law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) (citation omitted); *see also P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). When presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders*, 686 F. Supp. 2d at 1322 (citation omitted); *see also Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing M*arine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a

district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

Defendants acknowledge that § 13.2 of the Franchise Agreement excludes claims relating to confidential information, trademarks, and restrictive covenants, that is, those claims set forth in Plaintiff's Complaint. *See* Motion at 3. n.1. At first blush, it appears that Plaintiff's claims fall outside the scope of the arbitration provision and, therefore, no arbitrable issue exists. However, Defendants elect to grasp at straws. In arguing that Plaintiff's claims somehow fall within the scope of the arbitration clause, Defendants take an unreasonable and illogical interpretation of the Franchise Agreement. Specifically, Defendants assert that § 13.1 of the Franchise Agreement requires that any claims that are not to be arbitrated must *actually* appear in § 13.1. *See id.* Thus, Defendants take the position that § 13.2 is utterly superfluous. Not so.

In interpreting contracts such as the Franchise Agreement the Court looks to the plain meaning of the language contained therein. *See Rose v. M/V GULF STREAM FALCON*, 186 F.3d 1345, 1350 (11th Cir. 1999) ("It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." (citing *Green v. Life & Health of America*, 704 So. 2d 1386, 1391 (Fla. 1998) (further citations omitted); *see also Spungin v. GenSpring Family Offices, LLC*, 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) ("In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.") (citation omitted); *Barakat v. Broward County Housing Auth.*, 771 So. 2d 1193, 1194-95 (Fla. 4th DCA 2000) ("Contracts are to be construed in accordance with the plain meaning of the words contained therein."). Further, when reviewing a contract to ascertain its true meaning, "the entire contract must be reviewed as a whole without

5

fragmenting any segment or portion." *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1296 (S.D. Fla. 2011) (citing *Jones v. Warmack*, 967 So. 2d 400, 402 (Fla. 1st DCA 2007)). Courts are not to rewrite the contract. *Id.* (citing *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1010 (11th Cir. 2003)).

Section 13.1.1(a) of the Franchise Agreement states that "[e]xcept as specifically modified by this Section *and* excepting matters involving remedies as set forth in Section 13.2, any controversy or claim arising out of or relating to this Franchise Agreement . . . shall be submitted to arbitration . . . ." *See* Franchise Agreement at § 13.1.1(a) (emphasis added). Contrary to Defendants' contention, the straightforward use of the conjunction "and" unequivocally indicates that the Franchise Agreement's exceptions to arbitrable issues are located in both § 13.1 and § 13.2. Defendants would have the Court rewrite § 13.1.1(a) to include the disjunctive "or," rather than what actually appears. The Court declines to do so.[3]

Any matter listed in § 13.2 is explicitly excluded from arbitration. The inquiry then becomes whether Plaintiff's claims are subsumed by § 13.2. They are.

Section 13.2 provides that "[t]he obligation to arbitrate shall not be binding upon either party with respect to claims relating to the Confidential Information or Marks; . . . obligations of Franchisee upon termination or expiration of th[e] Franchise Agreement; matters relating to actions which may impair the good will associated with the Marks; . . . or requests for restraining orders, injunctions or other procedures . . . ." Plaintiff's claims appear to fit neatly into these categories or, at an absolute minimum, are claims "relating to the Confidential Information or Marks." *See id.* As noted, "[t]his action arises out of Defendants' violation of the post

---

[3] Defendants also indirectly assert that § 13.1 requires any claim not based in equity, i.e. for monetary relief, to be subjected to arbitration. *See* Motion at ¶ 10. No such language is contained in § 13.1 and, accordingly, this assertion is entirely without merit.

termination obligations and restrictive covenants in the Franchise Agreement with [Plaintiff]," and includes claims for monetary and equitable relief relating to Defendants' alleged misappropriation of Plaintiff's trademarks and trade secrets.  *See generally* Complaint, ECF No. [1].  Indeed, save for their untenable interpretation of § 13.1, Defendants do not assert that Plaintiff's claims, as plead, fall outside of the arbitration provision.

III.   **CONCLUSION**

For the Court to compel arbitration, three factors must be present: (1) there must be a valid agreement to arbitrate; (2) the issue must be arbitrable; and (3) the right to arbitrate must not have been waived.  *Nat'l Auto Lenders*, 686 F. Supp. 2d at 1322.  Here, the issues presented are not arbitrable, as § 13.2 of the Franchise Agreement makes clear.  Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants, Son Le Enterprises, Inc. and Son Le's Amended Motion to Stay and Compel Arbitration, **ECF No. [21]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 18th day of February, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record