## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| JEWELRY REPAIR ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 9:15-cv-81622-BB |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SON LE ENTERPRISES, INC. and SON LE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, JEWELRY REPAIR ENTERPRISES, INC. ("JRE") sues Defendants SON LE

ENTERPRISES, INC. and SON LE (collectively, "Defendants"), and states:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

this action involves federal questions.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

3.      This is an action for injunctive relief pursuant to Fla. Stat. §542.335 and damages

in excess of $75,000, exclusive of interest, costs and attorney's fees.

4.      JRE is a citizen of the State of Florida.

5.      Defendants are citizens of the State of Georgia.

6.      This action arises out of Defendants' violation of the post termination obligations

and restrictive covenants in the Franchise Agreement with JRE (the "Franchise Agreement").

(See "Exhibit A").

7.      Venue is proper in this Court pursuant to Paragraph 12.1 of the Franchise Agreement, providing that venue of any action arising out of the Franchise Agreement shall be Palm Beach County, Florida.

8.      All conditions precedent to the filing of this action, if any, have occurred or have been excused or waived.

9.      JRE has been required to retain undersigned counsel to enforce its rights through this action, and has agreed to pay its counsel a reasonable fee for those services.

## GENERAL ALLEGATIONS

10.      JRE is a franchisor of jewelry and watch repair businesses (collectively, the "Fast-Fix Businesses") that operate under the names and trademarks, "Fast-Fix Jewelry Repairs", "Fast-Fix Jewelry and Watch Repairs" and "America's Jewelry Repair Professionals", all of which are federally registered trademarks (the "Marks").

11.      Since 1986, JRE has excelled in its competitive market place by establishing a distinctive and innovative system (the "System") for the operation of Fast-Fix Business, which includes all trade secrets, business methods and strategies, confidential business information and all goodwill associated with the Marks.

12.      There are approximately 156 Fast-Fix Businesses in the Unites States, offering and selling jewelry and watch repair services and related products to customers in a convenient "while you shop" format.

13.      Fast-Fix Businesses typically operate from a kiosk location or in-line store in a shopping mall or similar retail center.

14.    JRE has spent substantial sums of money, time and effort developing the System in its completive market place.  JRE's efforts have benefited both customers and franchisees of Fast-Fix Business alike.

15.    For more than ten (10) years, from April 9, 2004 to June 1, 2015, Defendants operated a Fast-Fix Business at Space No. K-1, Southlake Mall, Morrow, Georgia.  A true and correct copy of Defendants' Franchise Agreement is attached hereto as Exhibit A.

16.    As long-time franchisees and beneficiaries of JRE's System, Defendants had access to JRE's proprietary and confidential business information, including, but not limited to trade secrets, operations manuals, System standards, equipment lists, knowledge regarding the use of equipment and supplies, repair techniques, product lists, customer lists, customer accounts and relationships, lists and identities of suppliers, supplier agreements, stocking procedures, sales methods, business methods and strategies, operations data, training materials, marketing strategies, staffing strategies, retail customer pricing information, purchasing patterns, purchasing sources, types of products, selling prices, costs and profitability margins, and other information and requirements for the operation of a Fast-Fix Business (collectively, the "Confidential Information").

17.    This Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, the competitors of plaintiff, and such information is the subject of reasonable efforts to maintain its secrecy.   Confidential Information was continually shared with Defendants throughout the life of their franchise, including in the confidential operations manual (the "Operations Manual"), which contained hundreds of pages of JRE's proprietary knowledge and business insights on operating a jewelry and watch repair business within JRE's System.

18.     To further ensure the success of Defendants' franchise, JRE spent considerable time and effort training Defendants on all aspects of the Fast-Fix Business concept. Over the years, therefore, Defendants became intimately familiar with JRE's Confidential Information and proprietary System.

19.     To protect this valuable knowledge and information from improper use or disclosure, among other provisions, Section 8.1 of the Franchise Agreement contained a confidentiality provision providing that JRE's Confidential Information must at all times be treated and maintained as confidential trade secrets of JRE. Defendants expressly agreed to accept and abide by the terms of this provision when they signed the Franchise Agreement.

20.     In addition, in order to preserve JRE's investments in its competitive market place, and to prevent competitors from obtaining an unfair advantage over JRE, Section 8.4 of the Franchise Agreement contained a non-compete agreement (the "Non-Compete Agreement"), which contained restrictions on Defendants' ability to compete with JRE. Section 8.4 of the Franchise Agreement provides in pertinent part:

> 8.4 <u>Non-Compete</u>. It is agreed and understood that the Franchisor shall acquaint the Franchisee with the Franchisor's products, sales methods and other business methods, as well as the use of equipment and supplies generally, and wishes to be protected from having this information used by competitors. The Franchisee agrees that the Franchisor would be unable to protect the Confidential Information against unauthorized use or disclosure and would be unable to encourage a free exchange of ideas and information among the franchisees within the system if franchisees were permitted to hold interests in any competitive business. Accordingly, the Franchisee covenants that during the term of this Franchise Agreement and for a 24-month period thereafter, except as otherwise approved in writing by the Franchisor, that the Franchisee will not:
>
>             . . . .
>
> (b) directly or indirectly, as owner, officer, director, employee, agent, lender, broker, consultant, franchisee or in any other similar capacity whatsoever be connected in any manner with the ownership, management, operation or control, or conduct of a competitive business within 5 miles of the Premises or of any Franchised Business then in operation or under lease negotiations or

construction (provided that this restriction shall not apply to a 5% or less beneficial interest in a publicly-held corporation);

21.     Finally, to protect JRE's significant investments in its brand and trademarks, Section 6.4 of the Franchise Agreement provided that upon termination or expiration of the Franchise Agreement, Defendants must cease using JRE's name and Marks and refrain from using confusingly similar words and phrases in connection with any competitive business. Section 6.4 provides in pertinent part:

> 6.4 <u>Termination</u>. Immediately upon the termination or expiration of this Franchise Agreement, the Franchisee shall cease to have any authorization to use the Fast-Fix Jewelry and Watch Repairs name or Marks in any manner whatsoever, and shall forthwith cease and thereafter refrain forever from using the Fast-Fix Jewelry and Watch Repairs name or Marks and any other name or trademark that contains the words "Fast", "Fix", "Jewelry Repair", "Jewelry and Watch Repair", or any phonetic or confusingly similar words in connection with any business that offers services to repair jewelry or other goods or services related to those authorized for the Franchised Business. . . .

22.     On June 1, 2015, after declining JRE's offer to renew the term of their Franchise Agreement, Defendants' Franchise Agreement expired and their right to operate a Fast-Fix Business terminated.

23.     Following the expiration or termination of Defendants' Franchise Agreement, Defendants became subject to the post-term restrictive covenants, including the Non-Compete Agreement in Section 8.4 of the Franchise Agreement, the restrictions in Section 6.4 of the Franchise Agreement and other post-term obligations that Defendants owed to JRE.

24.     On or about October 23, 2015, JRE discovered that, notwithstanding the restrictive covenants, Defendants continued to operate a store offering the same or similar services offered by their former Fast-Fix Business at the same location – indeed at the same exact kiosk -- where Defendants previously operated their Fast-Fix Business.  Attached hereto as Exhibit B are pictures taken of Defendants' competitive business on or about November 1, 2015.

25.     In addition, in the operation of their competitive business, Defendants are displaying JRE's marks and using names, phrases and identifiers -- such as "Fix-it" and "Watch and Jewelry Repair" – that are the same as or confusingly similar to JRE's name and registered Marks.

26.     On October 23, 2015, JRE sent a cease and desist notice to Defendants, informing Defendants of their violations of the Franchise Agreement and their infringement on JRE's trade mark and intellectual property rights and requiring them to comply with all post-termination obligations under the Franchise Agreement.  Attached hereto as Exhibit C is a copy of the cease and desist notice sent to Defendants on October 23, 2015.

27.     Despite JRE's demands, Defendants continue to operate their competitive business in the same location as their previous Fast-Fix Business, using JRE's names and Marks and/or other names, phrases and identifiers confusingly similar to JRE's name and Marks.

**COUNT I**
**(Action for Preliminary and Permanent Injunction**
**Pursuant to Fla. Stat. § 542.335)**

28.     JRE re-avers paragraphs 1-27 above as if fully set forth herein.

29.     Section 542.335 of the Florida Statutes contains provisions setting forth valid restraints of trade or commerce. This section provides in pertinent part:

**542.335 Valid restraints of trade or commerce.--**

(1)     Notwithstanding s. 542.18, and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:

(a) A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.

(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:

1.      Trade secrets, as defined in s. 688.002(4).
2.      Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3.      Substantial relationships with specific prospective or existing customers, patients, or clients.
4.      Customer, patient, or client goodwill associated with:
a.      An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
b.      A specific geographic location; or
c.      A specific marketing or trade area.
5.      Extraordinary or specialized training.

Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.

(c) A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests. If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.

30.     The restrictive covenants contained in the Franchise Agreement, including the Non-Compete Agreement under Section 8.4 of the Franchise Agreement and other post-term restrictions under Section 6.4 are enforceable because they protect the specifically delineated legitimate business interests set forth in Fla. Stat. § 542.335.

31.     The restrictions contained in the Non-Compete Agreement and Post-Termination Obligations are reasonable as to time, geographical area and scope of activity to be restrained

and do not impose a greater restraint than is necessary to protect the legitimate business interests of JRE.

32.     Defendants acknowledged at Section 8.4(d) in the Franchise Agreement that "the length of the term and geographical restrictions contained in this Section are fair and reasonable and not the result of overreaching, duress or coercion of any kind."

33.     JRE has spent significant effort, time and money developing its brand and System, which includes all of JRE's Marks, trade secrets, good will and Confidential Information, which Defendants had access to and became familiar with during their tenure as franchisees of JRE.

34.     JRE will suffer irreparable injury if preliminary and permanent injunctive relief is not afforded by this Court, enjoining and prohibiting Defendants: (a) from using and/or disclosing the Confidential Information of JRE; (b) from competing with JRE in violation of the Franchise Agreement; (c) from soliciting or doing business with JRE's customers and suppliers in violation of the Franchise Agreement; and (d) any further or additional breaches of the Franchise Agreement.

35.     There is no adequate remedy at law to fully protect the interests of JRE (or other franchisees in JRE's System) and the restrictive covenants contained in the Franchise Agreement may be enforced by injunction, as provided in Section 12.7 of the Franchise Agreement:

> 12.7   <u>Injunctive Relief/Specific Performance</u>.   Franchisee recognizes that the Franchised Business is, or is intended to be, one of a large number of businesses identified by the Marks in selling to the public the services associated with the Marks, and hence the failure on the part of a single Franchisee to comply with the terms of its Franchise Agreement is likely to cause irreparable damage to Franchisor and/or to some or all of other franchisees within the system and damages at law would be an inadequate remedy. Therefore, in the event of a breach or threatened breach by Franchisee of any provision of this Franchise Agreement, then Franchisor shall be entitled, in addition to all other rights or remedies, to injunctions restraining such breach, without being required to show

any damage or to post any bond or other security, and/or to a decree for specific performance of the provisions of this Franchise Agreement.

36.     Defendants also are entitled to their attorneys' fees and costs pursuant to Section 12.3 of the Franchise Agreement, which provides that "[i]n the event any legal or arbitration action shall become necessary to interpret this Franchise Agreement or enforce its provisions, the party prevailing in such action shall be entitled to recover as part of its or their damages, all costs and disbursements reasonably necessary in the institution and prosecution of such action, including a reasonable attorney's fee."

**COUNT II**
**(Breach of Contract)**

37.     JRE re-avers Paragraphs 1-27 above as if fully set forth herein.

38.     By continuing to operate a store offering the same services offered by their former Fast-Fix Business at the same location where they previously operated their Fast-Fix Business, Defendants are in breach of the Non-Compete Agreement under Section 8.4 of the Franchise Agreement.

39.     By using names, phrases and/or other identifiers that are confusingly similar to JRE's Marks or other restricted names -- including "Fast", "Fix", "Jewelry Repair", "Jewelry and Watch Repair" -- Defendants are in breach of the post-term restriction in Section 6.4 of the Franchise Agreement.

40.     In addition, Defendants failure to properly de-identify their store, vacate the premises and assign or sublet the lease to JRE, among other things (the "Post-Termination Obligations"), constitutes a breach of Section 12.6 of the Franchise Agreement, which provides:

12.6 <u>Effect of Termination</u>.

12.6.1 Upon expiration or termination of this Franchise Agreement, Franchisee's authorization to use in any manner the Fast-Fix Jewelry Repairs

9

name or any confusingly similar name shall terminate forthwith. Franchisee shall not thereafter, directly or indirectly, identify itself in any manner as a Franchisee, or publicly identify itself as a former franchisee or use any of Franchisor's Confidential Information, Marks, signs, symbols, devices, procedures or other materials constituting part of the Franchised Business.

12.6.2 Upon expiration or termination of this Franchise Agreement, Franchisor or its designee, shall have the right to offer to purchase Franchisee's equipment at its depreciated value, and if Franchisor exercises said right, Franchisee shall sell said items, free and clear of all lien, claims and other encumbrances, to Franchisor at said price. Depreciated value shall be the lesser of market value or Franchisee's cost less depreciation on a straight line basis of ten (l0%) percent per year.

12.6.3 Franchisee agrees that, upon expiration or termination of this Franchise Agreement, it will vacate the Premises immediately, or, at the option of Franchisor, will immediately make such removals or changes in signs and colors of the Premises as Franchisor shall reasonably request so as to distinguish effectively the Premises from their former appearance and from other Franchised Businesses. If Franchisee shall fail to make such changes forthwith, then Franchisor may enter upon the Premises and make such changes at Franchisee's expense. If the Premises are not subleased by Franchisor or its affiliates to Franchisee, Franchisor shall have the option to require Franchisee to assign its leasehold interest in the Premises to Franchisor upon expiration or termination of this Franchise Agreement.

12.6.4 Upon expiration or termination of this Franchise Agreement, the Franchisee shall return to Franchisor all copies of documents, instructions (including all operations data instruction material), manuals, display items, materials, promotional aids and all writings bearing the Fast Fix Jewelry Repairs name. Franchisee shall also comply with its obligations under Section 8.5, and cooperate as requested by Franchisor to assure that the telephone listings and numbers for the Franchise Business are assigned to Franchisor (or its designee) in accordance with the Limited Power of Attorney attached as Exhibit F hereto.

12.6.5 In the event of termination for any default of Franchisee, the extent of all damage which Franchisor has suffered by virtue of such default shall be and remain a lien in favor of Franchisor against any and all of the personal property, machinery, fixtures and equipment owned by Franchisee on the Premises at the time of such default.

41.    Defendants' breaches and wrongful acts have caused damage to JRE.   JRE anticipates that the damage will continue to accrue as Defendants continue to operate a

competitive business in the same location as their previous Fast-Fix Business in violation of the restrictive covenants contained in the Franchise Agreement and in breach of the Post-Termination Obligations under Section 12.6 of the Franchise Agreement.

### COUNT III
### (Unjust Enrichment)

42.     JRE re-avers Paragraphs 1-27 above as if fully set forth herein.

43.     As a direct and proximate result of the Defendants' conduct, JRE has suffered, and will continue to suffer irreparable injury, loss of reputation and pecuniary damages.

44.     JRE has created value and generated goodwill in connection with its brand and System for operating Fast-Fix Businesses.

45.     Defendants elected not to renew the Franchise Agreement and therefore no longer are authorized franchisees of JRE's System and brand and no longer pay required fees to JRE for the operation of Fast-Fix Businesses.

46.     Notwithstanding that they are no longer authorized franchisees, Defendants have traded and/or continue to trade on the value and goodwill of JRE's reputation, Marks and Confidential Information, including trade secrets, through deceptive, unfair and unlawful practices.

47.     Defendants have operated and/or continue to operate a competitive business offering the same or similar products and services in the exact same location as their former Fast-Fix Business utilizing the same Confidential Information, proprietary tools and techniques, and displaying identical or confusingly similar names and marks as other Fast-Fix Businesses.

48.     As a result of the Defendants' actions, a benefit has been bestowed upon the Defendants, and the Defendants have realized and generated economic and other benefits at

JRE's expense and without paying fees that normally would be required under an active franchise agreement.

49.     JRE has not authorized, acquiesced in or otherwise agreed to the Defendants' actions complained of herein.

50.     It would be inequitable, under these circumstances, for the Defendants to retain the benefits accrued through Defendants' unlawful conduct complained of herein.

## COUNT IV
### (Misappropriation of Trade Secrets)

51.     JRE re-avers Paragraphs 1-27 and 38-41 above as if fully set forth herein.

52.     JRE is the exclusive owner of Confidential Information, including trade secrets and other proprietary information.

53.     Defendants received and became familiar with JRE's trade secrets and other proprietary information.

54.     Defendants received a copy of JRE's Operations Manual, which contains further trade secrets and proprietary information and, itself, constitutes a trade secret.

55.     Upon termination of the Franchise Agreement, Defendants were required to return their copy of JRE's Operations Manual to JRE and otherwise refrain from using JRE's trade secrets and proprietary information against JRE.

56.     Defendants failed to return JRE's Operations Manual and have used JRE's proprietary information and trade secrets in order to directly compete with JRE.

Accordingly, Defendants have intentionally and wrongfully used, withheld and misappropriated JRE's trade secrets and proprietary information to compete with JRE.  As a result, JRE has suffered and will continue to suffer damages and/or irreparable injuries.

**COUNT V**
**(Unfair Competition Under the Lanham Act,**
**15 U.S.C. § 1125(a))**

57.     JRE re-avers Paragraphs 1-27 and 38-41 above as if fully set forth herein.

58.     JRE is in the business of providing goods and services under JRE's names and federally protected Marks;

59.     Defendants are operating a competitive business using the names, words, phrases and other identifiers – such as "Fix-It" and "Watch and Jewelry Repair" -- that are the same as or confusingly similar to JRE's names and Marks.

60.      Defendants' use in commerce of JRE's names and Marks are likely to cause confusion or to deceive the public as to the origin, sponsorship or approval of the goods and services provided by Defendants.

61.     Specifically, customers and other members of the public might reasonably mistake Defendants' illicit "Fix It" business for an authorized Fast-Fix Business, when in fact the two are in direct competition.

62.     Defendants were aware that such confusion would result when they refused to renew the Franchise Agreement and their failure to comply with the restrictive covenants in the Franchise Agreement is an open example of their desire to trade off the goodwill and public recognition of JRE.

63.     Defendants' actions are willful and intentional and constitute a false designation of origin and/or false or misleading description or representations of fact about Defendants' goods, services and commercial activities.

64.     As a direct and proximate result of such unfair competition, JRE has suffered and will continue to suffer damages and irreparable injury to its business, reputation and goodwill

through the loss of control over and protection of JRE's customer base, names and Marks, on which Defendants have unfairly capitalized.

## COUNT VI
### (Trademark Dilution Pursuant to 15 U.S.C. § 1125(c))

65.     JRE re-avers Paragraphs 1-27 and 38-41 above as if fully set forth herein.

66.     JRE is the owner of the Marks, which have gained distinctiveness among the public due to the use of the Marks in commerce since 1986 due in large part to JRE's substantial investments over the years.

67.     Defendants' use of confusingly similar words and phrases in naming their competitive business impairs the distinctiveness of JRE's Marks and dilutes the investment that JRE has made to enhance its brand recognition.

68.     Defendants' have failed to respect JRE's efforts to protect its investments in its Marks, which benefit all franchisees, but instead have named their competitive business using words and phrases that Defendants have expressly agreed are confusingly similar to JRE's federally protected Marks.

69.     Accordingly, Defendants' wrongful conduct has resulted in dilution by blurring of JRE's Marks, pursuant to 15 U.S.C. § 1125(c).

70.     JRE has suffered and will continue to suffer damages as a result of Defendants actions.

## COUNT VII
### (Common Law Trademark Infringement)

71.     JRE re-avers Paragraphs 1-27 and 38-41 above as if fully set forth herein.

72.     By virtue of having used and continuing to use its trademarks, JRE has acquired common law rights in those marks.

73.     The Defendants' use of marks identical or confusingly similar to JRE's trademarks infringes JRE's common law rights in its trademarks, and this use is likely to cause confusion, mistake, or deception among consumers, who will believe that the Defendant's goods, services, and/or products originate from, are affiliated with, or are endorsed by JRE when, in fact, they are not.

74.     As a direct and proximate result of the Defendants' infringement of JRE's common law trademark rights under Florida and other common law, JRE has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, JRE Jewelry Repair Enterprises, Inc. respectfully requests that the Court grant it the following relief:

(a)     Issuing a preliminary and permanent injunction:

      (i)     enjoining and prohibiting Defendants from using and/or disclosing Confidential Information of JRE in violation of the Franchise Agreement;

      (ii)    enjoining and prohibiting Defendants from competing with JRE in violation of the Franchise Agreement;

      (iii)   enjoining and prohibiting Defendants from using JRE's names, trademarks, and trade dress and/or using any confusingly similar names, words, phrases and other identifiers in the operation of any competitive business in violation of the Franchise Agreement;

      (iv)     enjoining and prohibiting Defendants from soliciting or doing business in any way with JRE's customers and suppliers in violation of the Franchise Agreement; and

      (v)     enjoining any further or additional breaches of the Franchise Agreement;

(b)     Entering judgment in its favor for the damages caused by Defendants' wrongful conduct and breaches of the Franchise Agreement;

(c)     Granting specific performance of the Defendants' obligations under Section 12.6 of the Franchise Agreement;

(d)     Granting an award for interest, costs and attorney's fees pursuant to the Franchise Agreement, or alternatively under Fla. Stat. § 542.335(l)(k); and

(e)     Granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2016, I caused a copy of this document to be served by electronic filing on all counsel of record.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
Counsel for Jewelry Repair Enterprises, Inc.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida  33301
Telephone:  (954) 765-0050
Facsimile:  (954) 765-1477


/s/ David O. Batista
David O. Batista
Florida Bar No. 0175803
E-Mail: batistad@gtlaw.com
Andrea Shwayri Ferraro
Florida Bar No. 0051566
E-Mail: shwayria@gtlaw.com

*MIA 185128538v2*

16